[No. B080496. Second Dist., Div. Three. Mar. 1, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN P. HURICKS, Defendant and Appellant.

[No. B085033. Second Dist., Div. Three. Mar. 1, 1995.]

In re KEVIN P. HURICKS on Habeas Corpus.

## COUNSEL

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LUKE, J.*—

### INTRODUCTION

Kevin P. Huricks (Huricks) appeals from the judgment entered following his plea of nolo contendere to six counts of forcible rape, violations of Penal Code section 261, subdivision (a)(2),[1] together with an enhancement allegation that the victim was vulnerable within the meaning of section 667.9, subdivision (a); one count of attempted forcible oral copulation, a violation of sections 664 and 288a, subdivision (c); one count of sexual battery, a violation of section 243.4, subdivision (d); one count of using a minor for sex acts, a violation of section 311.4, subdivision (c); and one count of assault with the intent to commit a felony, a violation of section 220.

Huricks was arraigned on the above charges on July 9, 1993, at which time he pled not guilty and denied the special allegations. On September 9, 1993, he withdrew his not guilty plea and entered a plea of nolo contendere to all charges, while admitting the special allegations. His motion to withdraw his plea was heard and denied on October 7, 1993, when he was sentenced to state prison for the middle term of six years for each of four

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

forcible rapes,[2] to run consecutively to each other, plus one year for the vulnerable (defenseless) victim enhancement for one of the rapes,[3] to run consecutively to the other sentences, for a total term of 25 years. He was given credit for 181 days of presentence custody, including 121 days of actual custody and 60 days of good time/work time.

A notice of appeal was filed by Huricks on October 7, 1993,[4] and a certificate of probable cause was issued on October 12, 1993.

## STATEMENT OF FACTS[5]

On the date of his plea, September 9, 1993, Huricks's trial counsel stated for the record that three days earlier she received a call from him indicating that he wished to enter into a plea agreement, irrespective of her advice to the contrary.

After the deputy district attorney advised Huricks of the consequences under the terms of a plea bargain of his pleading nolo contendere to the charges and admitting the special allegations, and elicited Huricks's negative response to questions as to whether other promises had been made to him by anyone to get him to do so, and had he been threatened by anyone, the following conversation occurred:

"[Deputy District Attorney]: Are you doing this freely and voluntarily after having talked the matter over with your lawyer?

"[Huricks]: I'm doing it voluntarily because of some of the evidence, but I am not guilty of all these charges.

"[Deputy District Attorney]: So you think it's in your best interest to do this, then?

"[Huricks]: Yes, I do."

Before he pled nolo contendere to all the counts and admitted the special allegations, Huricks acknowledged that he had had an opportunity to discuss

---

[2]The sentences as to all other counts were ordered to run concurrently to the sentences imposed for the four rapes.

[3]The sentences for the remaining enhancements were stayed, the stay to become permanent upon completion of the previous sentence.

[4]Also a related petition for writ of habeas corpus was filed by Huricks on June 24, 1994 (No. B085033), asserting that he was denied effective assistance of counsel as to his motion to withdrew his plea of nolo contendere, in that counsel failed (a) to file a competent motion, and (b) to represent his interests at the hearing on the motion. The petition is being considered concurrently with this appeal.

[5]Since Huricks pled nolo contendere and no testimony was presented, this statement of facts is taken from the transcript of Huricks's plea and his motion to withdraw his plea.

the case with his attorney and waived his constitutional rights. The trial judge accepted his plea as being free and voluntary.

At the hearing on the motion to withdrew his plea on October 7, 1993, Huricks stated: "Your honor, I was asked by my family to take this plea bargain, but I'm a homosexual and I wouldn't in no way rape somebody and plus my profession also and I would like to try to go to trial with this."

The trial judge asked for confirmation of his recollection that at an earlier stage of the proceedings Huricks wanted to enter a plea, then changed his mind, and after the case was continued for trial, he called his attorney and again indicated he wished to change his plea.

Huricks's counsel answered:

"That's correct, your honor. . . . Yes, we were here on September 3rd. He entered into the plea. He started to enter into the plea and during the course of the plea by District Attorney Renee Korn[,] he decided to change his mind. Then as—which is incorporated in the plea transcript which was taken by Mr. De Long.

"I indicated to the court that I had received a call from my client and that he indicated to me that he wanted to come back to court as soon as possible and enter a plea at that time he indicated to me. And it resulted in a plea taken by Mr. Guy De Long."

Huricks interjected that he had difficulty reaching his attorney by collect call, adding that "my family is trying to get me to take the plea bargain and I don't feel right with it because I know I'm not guilty of all these accusations here and I—."

Huricks's counsel elaborated: "My client indicates that he was confused and indecisive, that is, regarding the plea, whether to take the plea or not to take the plea."

The trial judge prefaced his ruling by stating: "On the first occasion, Mr. Huricks, you may have had some doubts and reservations, although it was my—it's my recollection that you wanted to enter into a plea agreement then and during the course of the agreement you changed your mind. Then you returned to the county jail and you returned to Wayside and you had six full days to think about this and no one asked you to enter this plea, but you called up your attorney and said 'I want to enter into this plea.' "

The trial judge continued: "And—and you indicated on the record you wished to enter into this plea because it was in your best interests. I reviewed

the transcript of the plea and you appear to understand everything that Mr. De Long—you responded to all the questions, you understood that you were giving up your constitutional rights and I observed you very carefully because of your prior attempt to take a plea in this matter. I was concerned on whether it was free and voluntary, so I watched you very carefully and I'm convinced you fully understood your rights and you freely gave them up. I'm convinced that the plea is free and voluntary."

The trial judge, therefore, denied Huricks's motion to withdraw his plea and proceeded to sentence him.

## ISSUES

Huricks claims on appeal that:

1. The trial court's denial of the motion to withdraw his plea of nolo contendere was in error; and that

2. The defenseless victim enhancement must be stricken as there was no predicate sentence pursuant to section 667, subdivision (a).

## DISCUSSION

### 1. *Motion to withdraw plea of nolo contendere*

■ Huricks contends that the trial court erred in denying the motion to withdraw his plea, a motion made on the ground that he was induced to enter it through undue duress. This contention is not supported by the record.

Section 1018 states in relevant part: "Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court. . . . On application of the defendant at any time before judgment . . . the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

■ The general rule is that the burden of proof necessary to establish good cause in a motion to withdraw a guilty plea is by clear and convincing evidence. (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250]; *People* v. *Wharton* (1991) 53 Cal.3d 522, 585 [280 Cal.Rptr. 631, 809 P.2d 290].)

"Withdrawal of a guilty plea is left to the sound discretion of the trial court. A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (*People* v. *Nance* (1991) 1 Cal.App.4th 1453, 1456 [2 Cal.Rptr.2d 670]; *In re Brown* (1973) 9 Cal.3d 679, 685 [108 Cal.Rptr. 801, 511 P.2d 1153].)

To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. (*People* v. *Cruz*, *supra*, 12 Cal.3d at p. 566; *People* v. *Nance*, *supra*, 1 Cal.App.4th at p. 1456.) Other factors overcoming defendant's free judgment include inadvertence, fraud or duress. (*People* v. *Griffin* (1950) 100 Cal.App.2d 546, 548 [224 P.2d 47]; *People* v. *Dena* (1972) 25 Cal.App.3d 1001, 1008 [102 Cal.Rptr. 357].) However, "[a] plea may not be withdrawn simply because the defendant has changed his mind." (*Nance*, *supra*, 1 Cal.App.4th at p. 1456; *In re Brown*, *supra*, 9 Cal.3d at p. 686.)

 In the present case, there is no evidence to support Huricks's contention that at the time he entered his plea of nolo contendere, he was subjected to "overbearing duress," other than his statement at the hearing on the motion to withdraw his plea that he was "asked by [his] family to take this plea bargain" and, according to his counsel, was "confused and indecisive" as to whether to follow their advice.

Huricks's claim that his family pressured him into the plea is not enough to constitute duress. Nothing in the record indicates he was under any more or less pressure than every other defendant faced with serious felony charges and the offer of a plea bargain.

Notwithstanding Huricks's natural anxiety over allegations that he used his position as a teacher's aide in a special education class to check out from a board and care home a young female student suffering from cerebral palsy, with limited physical, emotional and mental skills,[6] took her to his residence and encouraged a minor male to rape her while he attempted sexual contact with the male, which events allegedly took place on several occasions, attracted considerable media attention, and precipitated fear that he would be personally harmed, such factors fail to establish that his free will was overcome in entering the plea.

This case is analogous to *People* v. *Urfer* (1979) 94 Cal.App.3d 887, 892 [156 Cal.Rptr. 682], in which the defendant sought unsuccessfully to withdraw his plea of guilty to a drug charge based on his counsel's representation

---

[6]This female, who was confined to a wheelchair and had little or no use of her legs, was the victim of the six counts of forcible rape charged against Huricks. A male minor was the victim of the remaining four counts contained in the information relating to attempted forcible oral copulation.

that defendant entered the plea "unwillingly" and with " 'reluctance,' " yielding to his counsel's " 'persuasions and prejudices.' "[7] The court concluded that "such state of mind is not [synonymous] with an involuntary act," nor a " 'factor overreaching defendant's free and clear judgment' " (*ibid.*), in holding that the trial judge acted within his discretion in denying the motion to withdraw. (*Id.* at p. 893.)

Similarly, in *People* v. *Hunt* (1985) 174 Cal.App.3d 95, 104 [219 Cal.Rptr. 731], where there was contradictory evidence as to whether the defendant was adequately advised before pleading guilty to multiple sexual offenses, but no indication of mistake, ignorance or overbearance of his free will, the court found that the motion to withdraw his plea was properly denied, and the entry of his plea " 'against his better judgment' "[8] demonstrated only his "continued reluctance and vacillation between desiring to plead and considering going to trial." (*Id.* at p. 104.)

As with *Urfer* and *Hunt*, Huricks failed to show that his plea was an involuntary act. His reluctance and vacillation were indicated, though, when he previously started to enter a plea and then changed his mind. Six days later he changed his mind again and decided to plea. Within the next 30 days, he changed his mind yet again and tried to withdraw his plea for reasons not amounting to good cause. (*People* v. *Nance, supra,* 1 Cal.App.4th at p. 1456.)

In acknowledging the voluntariness of his plea, Huricks proclaimed his innocence to some of the charges, a position unsubstantiated by the record. At the hearing on the motion to withdraw his plea, he invoked his homosexuality as a means of absolving himself of any culpability as to the forcible rape charges, perhaps not fully comprehending that they were predicated on an "aider and abettor" theory rather than his direct perpetration of the acts.

After carefully observing Huricks throughout these proceedings, the trial judge was "convinced that the plea is free and voluntary" and, on that basis, denied the motion to withdraw the plea.

Huricks's contention that the denial of the motion to withdraw his plea was in error is made in part in reliance on *People* v. *Campos* (1935) 3 Cal.2d 15, 17 [43 P.2d 274]. In that case, it was held that a defendant charged with murder and sentenced to death upon his plea of guilty must be permitted to

---

[7]Unlike Urfer, Huricks entered his plea against the advice of his attorney who believed there was exculpatory evidence.

[8]A dissimilarity between Hunt and Huricks is that Huricks felt his plea was in his best interest.

withdraw his plea, based on a finding that it was induced by the representation of the district attorney to his counsel that he would not receive the death penalty.

The court's rationale was: " '[T]he law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it.' " (*People* v. *Campos, supra*, 3 Cal.2d at p. 17.)

Huricks's case is distinguishable in that there is no evidence that he was ignorant of his rights and the consequences of his acts, and whereas Campos's plea was induced by a district attorney's promise that went unfulfilled, Huricks got exactly what he bargained for.

*People* v. *McGarvy* (1943) 61 Cal.App.2d 557, 564 [142 P.2d 92], is the other case on which Huricks relies principally to support his claim. *McGarvy* involved a defendant charged with one count of murder and one manslaughter count, who pled guilty to the manslaughter charge and had the murder count dismissed. After judgment the trial court denied his motion to change his plea to not guilty. This court reversed the trial court's order on the grounds that the defendant was not afforded ample time to converse and advise with counsel of his own choosing prior to the making of his original plea.

In reaching this decision, the court commented: "[T]he withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty." (*People* v. *McGarvy, supra*, 61 Cal.App.2d at p. 564.)

The factual situation in *McGarvy*, however, is dramatically different from Huricks's because McGarvy was, in effect, "railroaded" into making a guilty plea on the advice of an attorney who talked to him for only 20 to 30 minutes at the district attorney's request, causing the court to conclude that "there was undue haste in the entire disposition of the case." (61 Cal.App.2d at p. 561.)

Such was not the case here where Huricks, represented by the same public defender at every stage of the proceedings, entered his plea against the advice of his trial counsel, after having started to do so six days earlier when he first decided to change his mind.

■ Finally, in support of the motion to withdraw his plea, Huricks asserts that he received inadequate representation of counsel at the hearing on the motion.

"To show ineffective assistance of counsel, defendant has the burden of proving that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People* v. *Kelly* (1992) 1 Cal.4th 495, 519-520 [3 Cal.Rptr.2d 677, 822 P.2d 385]; *Strickland* v. *Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052].)

Specifically, Huricks argues, first, that his trial counsel failed to prepare moving papers containing anything other than broad generalities and legal conclusions in his declaration and supporting points and authorities. Yet a review of the pertinent documents discloses that the language used, though expressed in generic terms, sufficed to raise the relevant issues and put the parties on notice as to the thrust of the motion.

Huricks's second claim is that his attorney failed to conduct an evidentiary hearing or to argue on his behalf at the hearing on the motion, leaving all argument to him. The need for an evidentiary hearing is problematical but the record does not substantiate his assertion that his counsel stood "mute" at the motion hearing. To the contrary, counsel elaborated on his reasons for wanting to withdraw his plea while allowing him, possibly for tactical purposes, to address the court directly.

Moreover, none of the cases cited by Huricks as authority for the position that he was inadequately represented is precisely in point. One of them involves a situation where counsel refused to represent the defendant at the motion hearing (*People* v. *Garcia* (1991) 227 Cal.App.3d 1369, 1377 [278 Cal.Rptr. 421]); another where counsel failed to advise the defendant of critical information relating to a potential defense (*People* v. *Harvey* (1984) 151 Cal.App.3d 660, 670 [198 Cal.Rptr. 858]); another where the defendant was influenced to plead by counsel unprepared to go to trial for lack of payment of sufficient fees (*People* v. *Young* (1956) 138 Cal.App.2d 425, 426 [291 P.2d 980]); and the other where the defendant pled on the brief advice of counsel called into the case by the district attorney. (*People* v. *McGarvy*, *supra*, 61 Cal.App.2d at p. 563.)

Perhaps Huricks's counsel should have mentioned at the hearing on the withdrawal motion, as she stated on the record before her client entered his plea against her advice, that she had "information which I believe is exculpatory."[9] If her omission to reiterate this point amounts to unprofessional error, it is deemed nonprejudicial due to the unlikelihood of its changing the outcome.

In view of Huricks's failure to establish good cause for the motion to withdraw his plea, we find that the trial court did not abuse its discretion in denying the motion.

### 2. Defenseless victim enhancement

■ Huricks further contends that the defenseless victim enhancement must be stricken because there was no predicate sentence for a prior serious felony imposed pursuant to section 667, subdivision (a).[10] This contention is without merit.

The so-called defenseless victim enhancement, under which Huricks was sentenced to an additional consecutive year for one of the rapes, derives from section 667.9, subdivision (a) which reads in pertinent part: "Any person who commits one or more of the crimes listed in subdivision (c) against a person who is 65 years of age or older, or against a person who is blind, a paraplegic, or a quadriplegic, or against a person who is under the age of 14 years, and that disability or condition is known or reasonably should be known to the person committing the crime, shall receive a one-year enhancement for each violation in addition to the sentence provided under Section 667."[11]

Subdivision (b) of section 667.9 provides: "Any person who has a prior conviction for any of the offenses listed in subdivision (c), and who commits one or more of the crimes listed in that subdivision against a person who is 65 years of age or older, or against a person who is blind, deaf, developmentally disabled, a paraplegic, or a quadriplegic, or against a person who is

---

[9]The supposed exculpatory information refers to counsel's unverified representation that the female rape victim was on birth control and wanted to have sex.

[10]Section 667, subdivision (a)(1) provides: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

[11]The current subdivision (a) was added to the statute effective January 1, 1993. Prior to that time, the current subdivision (b) was formerly subdivision (a).

under the age of 14 years, and that disability or condition is known or reasonably should be known to the person committing the crime, shall receive a two-year enhancement for each violation in addition to the sentence provided under Section 667."

Subdivision (c) of section 667.9 states in part:

"Subdivisions (a) and (b) apply to the following crimes:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(4) Rape by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person in violation of paragraph (2) . . . of subdivision (a) of . . . Section 262."

The California Supreme Court has adopted the following rule of statutory construction: "In construing a statute, our principal task is to ascertain the intent of the Legislature. [Citation.] We do so by first turning to the words themselves, giving them their ordinary meaning. [Citations.] Of course, ' " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' [Citation.] In such circumstances, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)

Applying these rules, it is clear that the plain meaning of this statute is that the defenseless victim enhancement under subdivision (a) of section 667.9, which does not contain any prior conviction requirement, is intended for first time offenders, while subdivision (b) of section 667.9 is for offenders with a prior conviction of one of the specified felonies.

This interpretation is supported by the legislative history of the subdivision (a) of section 667.9 amendment which was initially introduced as California Assembly Bill No. 1611. According to a report prepared for a hearing of the Assembly Committee on Public Safety on April 30, 1991 at page 1, the author of the bill commented: "One who commits a crime against vulnerable victims is worthy of the additional sentence enhancement irrespective of whether he has a particular prior conviction. The purpose of this bill is to remove the requirement that the defendant have a prior conviction before qualifying for a sentence enhancement for victimizing a vulnerable person."

Subsequent reports prepared for Senate Committee ·on Appropriations Hearings on June 29 and August 19, 1992 (Assem. Bill No. 1611) at page 1 state:

"Existing law has a two-year enhancement for offenders with prior convictions who commit these types of crimes against vulnerable victims. This bill adds a one-year enhancement for first time offenders."

Huricks cites *People* v. *Jones* (1993) 12 Cal.App.4th 1106 [16 Cal.Rptr.2d 60] in support of his contention that the one-year enhancement must be stricken. In the *Jones* case, the defendant was convicted and sentenced by the trial court to the upper term on two counts of forcible oral copulation and forcible rape, to be served consecutively. A further five years was added as to each of the two terms pursuant to section 667.6, subdivision (a), based on prior rape convictions, and then two 5-year enhancement terms were imposed pursuant to section 667, subdivision (a) but stayed pursuant to section 654.[12] Since four of the other offenses of which the defendant was also convicted involved defenseless victims within the meaning of section 667.9, the trial court imposed two-year enhancement terms as to each of these counts, to be served consecutively. Division Four of the Second Appellate District held that the section 667.9 enhancements could not be imposed unless the enhancements under section 667, subdivision (a) were imposed because the language of section 667.9 states that the imposition of such enhancements is to be "in addition to the sentence provided under Section 667[(a)]." (*Jones*, *supra*, at p. 1115, italics omitted.)

However, Huricks's case must be distinguished from *Jones* which was decided on the basis of section 667.9 as it existed before the 1993 statutory amendment clarifying the difference between its application to first time offenders on the one hand and to previously convicted felons on the other.

Nonetheless, Huricks maintains that a prior felony conviction must be found in order to impose an enhancement under the amended statute as well as the former version. He argues this is due to the fact that both the new subdivisions (a) and (b) of section 667.9 contain identical language to the effect that any affected person "shall receive [an] enhancement for each violation in addition to the sentence provided in Section 667."

To accept Huricks's interpretation of the statute would be to deny that the Legislature intended to make any distinction between subdivisions (a) and (b) of section 667.9. We reject that construction.

---

[12]Section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

If Huricks's point has any meaning at all in this context, it is that the "in addition to" language in each of the new subdivisions mandates that any enhancement has to be cumulative to any other enhancement, if one is imposed for a prior conviction of a serious felony under section 667.

Therefore, we find that the plain language of section 667.9, subdivision (a), when viewed in the light of the legislative intent, clearly applies to first time offenders such as Huricks.

Accordingly, the petition for writ of habeas corpus in case No. B085033 is denied, and the judgment in case No. B080496 is affirmed.

Klein, P. J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 25, 1995.